**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JARIUS DAVIS** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 22-4980 |
| | : | |
| **THE SALVATION ARMY** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                                  **May 5, 2023**

    A thirty-year-old man sues a summer camp owner alleging an eighteen-year-old man sexually assaulted him at the camp over Labor Day Weekend in 2002. He sues the camp owner for negligence in failing to protect him from a foreseeable risk of assault by the offender. The man's allegations proceeded into discovery. He did not discover the offender's name. He did not adduce evidence the unknown offender had a relationship with the camp owner other than an alleged statement made by another unknown person telling his mother at some unknown time of the camp owner accepting volunteers in 2002 found to be sexual offenders by some court.

    We rarely dismiss disputed allegations before trial of child sexual assault when we have some evidence of the relationship between the defendant and the alleged offender. But the man adduced no proof of the camp owner possibly being able to foresee the risk from this unknown offender. We cannot allow the man to proceed to trial baldly claiming assault over twenty years ago without some basis to show the camp owner could foresee and protect against the risk of sexual assault by an agent or other known risk. The man did not adduce evidence of the relationship between the camp owner and the alleged offender. We today assume the assault occurred based on disputed facts. But the man needs to tie the alleged offender to the camp owner to demonstrate a breach of duty to protect from a foreseeable risk. He instead relies on his mother's unclear conversation with an unknown person at an unknown time to try to tie the camp owner to the offender. We must

grant the camp owner's motion for summary judgment as there are no genuine issues of material admissible facts as to the camp owner's breach of a duty to protect against a foreseeable risk of assault by an unknown person.

I.   **Undisputed Facts**[1]

Thirty-year-old Jarius Davis alleges an eighteen-year old man at a Salvation Army summer camp sexually assaulted him as a ten-year old child over Labor Day Weekend 2002.[2] The parties agree: (1) the Salvation Army owned, maintained, operated, and managed a facility called Camp Ladore; (2) Mr. Davis's birthdate is August 9, 1992 making him ten years old at the time of the alleged assault on Labor Day weekend 2002; (3) Mr. Davis cannot identify his alleged assailant; and (4) Mr. Davis did not tell anyone about the alleged assault for eighteen years.[3] The parties dispute everything else, including whether the alleged sexual assault occurred under the circumstances alleged. Mr. Davis's claims would proceed to trial given disputed facts if he could show some trial admissible evidence tying the offender to Salvation Army. But Mr. Davis offers no trial admissible evidence of a relationship between the alleged offender and Salvation Army.

II.   **Facts adduced during discovery.**

Mr. Davis alleges he and his mother Bernadine Davis attended Camp Ladore over Labor Day weekend in 2002.[4] Ms. Davis allowed her then ten-year-old son to go on a canoe ride with an unidentified male late one afternoon.[5]  Mr. Davis and the unidentified male went canoeing on the camp's large lake at around 3:15 or 3:30 pm. Mrs. Davis asked someone to return her son around 5:00 pm for dinner.[6] Ms. Davis began to worry when the male and her son did not return at 5:00 pm.[7] She looked for her son by the lake and in the dining hall but could not find him.[8] Some teenagers in the dining hall pointed out a man who ran the Ridge Avenue Salvation Army and Ms. Davis spoke to him about her missing son.[9] Ms. Davis testified her son turned up in the dining hall

2

around ten or fifteen minutes later.[10] Ms. Davis testified she asked her son what happened to make him late and he responded the man who took him on the canoe took him to a cabin where two other men were present.[11] Ms. Davis asked her son if anyone did anything to hurt him or touch him. He denied any harm.[12] Ms. Davis did not report the incident to anyone at the camp.[13]

Mr. Davis told his mother eighteen years later of an unidentified male sexually assaulting him while the two were out in the canoe.[14] Mr. Davis then sued almost twenty years after the alleged sexual assault asserting one count of negligence against Salvation Army.

### *Ms. Davis relies on an undated conversation with an unknown person.*

Ms. Davis now swears she told an unidentified director of the Ridge Avenue Salvation Army of her concern regarding her son at an unknown time. The timing of Ms. Davis's conversation with the director of the Ridge Avenue Salvation Army is inexplicably unclear. Mr. Davis swore his mother spoke to the director the day of the canoe ride, expressing her concerns when her son did not return from the canoe ride at 5:00 pm. But Mr. Davis does not confirm the alleged statement from a Salvation Army director regarding the identity of the offender. And he could not since he did not hear it.

His mother could not identify the time of her conversation with the unknown director. Ms. Davis swore the director of the Ridge Avenue Salvation Army told her "not that night, but another – not the night of the incident but at a later time …" the man who took her son out in the canoe had been adjudicated a sexual offender by "the court" and "the court" placed the offender at Camp Ladore as a "volunteer." [15]

*There is no evidence of the alleged offender's association*
*with the Salvation Army.*

Mr. Davis concedes neither he nor his mother can remember the offender's name. But he argues his description of the offender including his race (white), height, glasses, facial hair, and clothing create a fact issue at summary judgment.[16]

There is nothing in the record showing efforts made by Ms. Davis or her son (or his lawyer) to pursue the identity of the alleged offender or to investigate after the director of the Ridge Avenue Salvation Army allegedly stated the male who took Mr. Davis out on the canoe ride is a sex offender. There is no evidence of the identity of the alleged offender; the alleged offender's relationship to the Salvation Army; and the identity of the director of the Ridge Avenue Salvation Army who allegedly told Ms. Davis the man who took Mr. Davis out in the canoe is a registered sex offender who had been placed at Camp Ladore by the court.

**III.  Analysis**

Mr. Davis alleged, but now needs to show evidence: the unidentified offender is either an employee or agent of the Salvation Army, the Salvation Army owed a duty to protect him from sexual assault by its employee or agent, and the Salvation Army had either actual or constructive knowledge of the offender's predatory and dangerous nature but failed to take steps to protect him causing harm.

Mr. Davis's complaint identifies nine theories of the Salvation Army's negligence: (1) failing to protect him; (2) failing to ensure children were not subjected to dangerous and unsafe circumstances; (3) failing to notify or warn of the threat of harm and danger associated with the offender's presence at the camp; (4) failing to properly train, supervise, or manage its agents and employees; (5) negligently hiring the offender it knew or should have known would be a danger to children; (6) failing to develop and follow proper policies, rules, regulations, and procedures to

prevent sexual assault of children at the camp including, but not limited to, allowing the offender to take a child alone on a canoe; (7) failing to warn or notify Mr. Davis of the threat of harm and danger arising from inadequate training/experience of its employees, agents, servants, and/or assigns with respect to sexual assault committed by its employees/agents; (8) failing to adequately supervise its employees/agents; and (9) failing to properly screen employees/agents before hiring.[17]

The Salvation Army moved for summary judgment.[18] It argues (1) Mr. Davis's "story" is simply not believable and we must disregard it; (2) there is no evidence to show the Salvation Army employed the offender; and (3) there is no evidence to support causation and damages, bootstrapping its motion to preclude Mr. Davis's medical expert.[19] We agree with Mr. Davis of no need to identify the offender by name at this stage. But we also find the lack of evidence of a relationship between the alleged offender and Salvation Army mandates we grant summary judgment for Salvation Army. We cannot go to trial on a theory some unidentified person affiliated with Salvation Army told Mr. Davis's mother at an unknown time of an unknown court adjudicating the unidentified offender as a sexual offender, placing that offender at Camp Ladore, and the Salvation Army knew it had a convicted sex offender working at its camp as a volunteer.

**A. Mr. Davis fails to adduce disputed facts.**

We construe Mr. Davis's allegations of negligence against the Salvation Army as falling into two theories of liability: (1) the Salvation Army's negligence for breaching its affirmative duty to protect Mr. Davis from harm;[20] and (2) the Salvation Army's negligence for breaching its duty to control the conduct of the offender, through negligent hiring and supervision, as to prevent the offender from causing harm to Mr. Davis.[21]

5

### 1. The Salvation Army owed a duty of care to Mr. Davis as a minor camper.

Mr. Davis must adduce evidence of four elements to proceed to trial on a negligence claim: (1) the Salvation Army had a duty to conform to a certain standard of conduct; (2) a breach of the duty; (3) the breach caused him injury; and (4) actual loss or damage.[22] Whether the Salvation Army owed Mr. Davis a duty of care is a question of law.[23]

Pennsylvania law does not generally impose an affirmative duty to act or protect another from harm. The Restatement (Second) of Torts § 314 provides: "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."[24] There are exceptions to this general rule created by "special relations" giving rise to a duty to protect. Section 314A of the Restatement identifies four special relations creating a duty to protect: (1) a common carrier to its passengers; (2) an innkeeper to his guests; (3) a business owner to business invitees; and (4) "[o]ne who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other."[25] The duty to protect exists "only where the risk arises from the relationship."[26]

The Restatement (Second) of Torts section 315 applies to a duty to control the conduct of a third person to prevent him from causing harm to another. Pennsylvania law does not generally impose a duty "to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right of protection."[27]

Pennsylvania law, following Section 317 of the Restatement, imposes a duty on an employer to control the conduct of its employee: "[a] master is under a duty to exercise reasonable

care so as to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from conducting himself as to create an unreasonable risk of bodily harm" *if* the servant is on the master's premises or using its chattel *and* the master "knows or has reason to know that he has the ability to control his servant" *and* "knows or should know of the necessity and opportunity for exercising that control."[28]

Given all inferences in favor of Mr. Davis, we assume Mr. Davis is claiming Salvation Army owed him a duty to protect him under Restatement sections 314A(4)[29] and owed him a duty to control the conduct of its employee or volunteer—the alleged sex offender—to prevent the offender from harming Mr. Davis under Restatement section 317. We accept his asserted duty for purposes of today's analysis.[30]

Our analysis is informed by Judge Carlson's analysis of liability arising from a sexual assault of a minor at a camp in *R.D. v. Shohola, Inc.*[31] A former camper sued a camp's operator alleging another camper sexually assaulted him.[32] The camper asserted claims of negligence, negligent supervision, battery, and negligence *per se* seeking to hold the camp liable for the harm caused by the sexual assault. The camp moved for summary judgment. Judge Carlson construed the camper's first claim as a direct negligence claim against the camp for the breach of its duty to protect him.

Judge Carlson applied Sections 314A and 315 of the Restatement (Second) of Torts to conclude the camp owner had a special relationship with its minor camper under section 314A(4).[33] Judge Carlson reasoned a child camper in a special relationship under section 314A(4) is "typically in some respect particularly vulnerable and dependent on the defendant, who, correspondingly, holds considerable power over the plaintiff's welfare."[34] Judge Carlson concluded a camper in the care of a camp comes within the special relationship defined in Restatement section 314A(4). After

7

concluding the camp owner had a duty of care to its camper, Judge Carlson denied the camp owner's motion for summary judgment, finding the question of whether the camp breached the duty and whether the breach is the proximate cause of the camper's injuries is a question for the jury.[35]

Judge Carlson supported his conclusion by citing a long-standing opinion from our Court of Appeals finding a camp owes the highest degree of care to its campers.[36] In *Burwell v. Crist*, our Court of Appeals found camp owners owed the "highest degree of care" to a minor camper left in their care who suffered a fatal injury after being kicked in the head by a horse at the camp.[37] The court reasoned the camp owners owed a duty of care to select horses suitable to be around children for the protection of the campers. Evidence showed camp employees testified the horse who kicked the camper in the head reacted violently to other horses and had been observed kicking and attempting to kick other horses.[38] The court found this evidence sufficient to show the horses in the camp had not been "carefully selected for gentleness" and not "ideally suited for work with children" and should have been submitted to the jury for its determination of the camp's negligence.[39]

We conclude the Salvation Army had an affirmative duty to protect Mr. Davis from foreseeable harm because of the special relationship between a camp and its campers. We see nothing to depart from Judge Carlson's reasoning, particularly where the Salvation Army does not deny it had such a duty.

**B.  Mr. Davis adduced no evidence Salvation Army breached a duty of care.**

But our analysis does not end with identifying a duty. We must also review some evidence the Salvation Army breached its duty of care. Mr. Davis bears the burden of proof at trial on his negligence claims. "[W]here a non-moving party fails sufficiently to establish the existence of an

8

essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law."[40] "Mere allegations" are insufficient to defeat summary judgment.[41]

There is no evidence the Salvation Army breached its duty to protect Mr. Davis. There is no evidence of the alleged offender's connection to the Salvation Army. There are no documents from the Salvation Army or deposition from a Salvation Army representative regarding the affiliation of the alleged offender to the Salvation Army or the Salvation Army representative who told Ms. Davis the man who took her son out in the canoe is a convicted sex offender.

Mr. Davis argues his claims are corroborated by his mother's recollection, his expert's assessment of his childhood trauma, and "evidence" the Salvation Army knew it allowed a convicted sex offender to volunteer at its camp. This type of say-so is insufficient to meet his burden at summary judgment. Mr. Davis must present more than bare assertions, allegations, and speculations to show the existence of a genuine issue of material fact sufficient to meet his burden on summary judgment. He must present affirmative evidence to defeat summary judgment and "may not rely simply on the assertion that a reasonable jury could discredit the [Salvation Army's] account."[42]

Mr. Davis presents only his allegations unsupported by evidence. His expert's assessment is based only on his subjective report to her.[43] Mr. Davis relies on his mother's testimony an unidentified director of the Ridge Avenue Salvation Army told her the man who took her son out in the canoe is an adjudicated sex offender who served as a "volunteer" at Camp Ladore by order of an unidentified court. The statement is hearsay but could be considered an admission of a party-opponent if we knew the speaker. And while hearsay statements can be considered on a motion for summary judgment, we may only do so if the statements are capable of being admitted at trial.[44]

The statement is not capable of being admitted at trial based on the record before us. There is nothing in the record identifying the director of the Ridge Avenue Salvation Army who supposedly told Ms. Davis the man in the canoe volunteered at Camp Ladore and is a convicted sex offender. We have no idea who allegedly told Ms. Davis of an unidentified court order placing the alleged offender in Salvation Army's care.

This case is unlike the facts reviewed by Judge Carlson in *Shohola*. Judge Carlson denied summary judgment on the failure to protect claim based on the evidence in the record including: the parties did not dispute the presence of the camper who allegedly committed the sexual assault; a counselor testified he understood young boys are sexually curious; the co-director testified to a verbal policy communicated to counselors regarding sexual abuse and an "appropriate behaviors" meeting with camp staff; and the camp's written operating procedures manual listed sexual abuse as an "unacceptable behavior" and required counselors to patrol cabins at night to adequately supervise the campers.[45] Based on the record evidence, Judge Carlson concluded there is a genuine issue of material fact from which a jury could determine the camp breached its duty to the plaintiff camper by failing to adequately supervise the campers.[46] Unlike *Shohola*, we have no such evidence.

Mr. Davis also alleges the Salvation Army negligently hired and supervised its employee or agent, the unidentified offender. The tort of negligent supervision under Pennsylvania law is based on two duties of an employer: (1) the duty to reasonably monitor and control the activities of an employee; and (2) the duty to abstain from hiring an employee and putting the employee in a situation where the employee will harm a third party.[47] Our Court of Appeals also describes negligent supervision under Pennsylvania law as existing "where the employer fails to exercise ordinary care to prevent an intentional harm to a third party which (1) is committed on the

10

employer's premises by an employee acting outside the scope of his employment and (2) is reasonably foreseeable."[48] To recover for negligent supervision under Pennsylvania law, a plaintiff must prove his injuries resulted from (1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment; (2) committed on the employer's premises; and (3) when the employer knows or has reason to know of the necessity and ability to control its employee.[49]

But this theory is based on the existence of an employer-employee or principal-agent relationship. There is no evidence of an employer-employee or principal-agent relationship between the Salvation Army and the unknown offender. Mr. Davis argues his mother's testimony an unidentified director of the Ridge Avenue Salvation Army told her the man who took her son out on the canoe is a convicted sex offender who served as a volunteer at Camp Ladore. For reasons already explained, we have no evidence other than her hearsay statement inadmissible at trial. We have no evidence to corroborate the declarant.

Judge Carlson in *Shohola* granted summary judgment to the camp owner on a negligent supervision claim.[50] The camper alleged the camper who assaulted him might have been a counselor-in-training or a "senior camper" who the camp negligently hired and supervised. Judge Carlson found the camper's speculative testimony without more is insufficient to hold the camp owner liable on a negligent supervision or negligent hiring claim. We have essentially the same situation; there is no evidence the Salvation Army either hired the unidentified offender or negligently supervised him. We grant the Salvation Army's motion and enter judgment in its favor on the negligent supervision and hiring claims.

**C. We need not address the other arguments raised by the Salvation Army at summary judgment.**

The Salvation Army further argues we must disregard Mr. Davis's "story" at the summary judgment stage as unsupported by facts and Mr. Davis cannot meet his burden of proof on causation and damages because the expert report of Dr. Ann Wolbert Burgess should be precluded under *Daubert*.[51] We need not (and could not) decide whether to believe Mr. Davis's assault testimony. We accept as true an assault occurred and caused harm to Mr. Davis for purposes of our analysis today. But the alleged assault can only be remedied by the offender or another person breaching a duty to Mr. Davis based on adduced evidence of a relationship between the offender and Salvation Army. Having found Mr. Davis failed to meet his burden at summary judgment, we need not address these arguments.

## IV. Conclusion

Mr. Davis adduced no evidence suggesting a relationship between the alleged offender and the Salvation Army. We are left with an assault occurring on Salvation Army land by an unknown person. We grant the Salvation Army's motion for summary judgment.

---

[1] Our Policies require parties moving for relief under Fed. R. Civ. P. 56 include a Statement of Undisputed Material Facts ("SUMF") and an appendix to support summary judgment. The Salvation Army filed its Motion for summary judgment, brief in support of summary judgment, SUMF, and Appendix ("Appx.") at ECF Doc. Nos. 39 through 39–4. Mr. Davis filed his response to The Salvation Army's motion at ECF Doc. No. 43 through 43–4. Mr. Davis's response is non-compliant with our Policies requiring a consecutively paginated appendix: any additions to the movant's appendix shall be consecutively Bates-stamped beginning at the page number where the movant's appended ended. We twice struck Mr. Davis's response failing to consecutively paginate his appendix beginning where the Salvation Army's appended ended. *See* ECF Doc. Nos. 45, 47. Mr. Davis failed to correct the problem. *See* ECF Doc. Nos. 46, 48. We reviewed the substance of Mr. Davis's third non-compliant response. ECF Doc. No. 48.

[2] ECF Doc. No. 39-4, Appx. 2, ¶¶ 3–4.

[3] ECF Doc. No. 17; ECF Doc. No. 21 ¶ 4; ECF Doc. No. 39-3 SUMF ¶¶ 1, 2; ECF Doc. No. 48–3, Davis Counterstatement of Undisputed Material Fact ¶ 2.

---

[4] Specifically, August 30 to September 2, 2002. ECF Doc. No. 39-4, Appx. 2 ¶ 4.

[5] ECF Doc. No. 39–4, Appx. 17–18.

[6] *Id.*

[7] ECF Doc. No. 48–4, Appx. 7–8 (using the pagination assigned by the CM/ECF docketing system).

[8] *Id.*, Appx. 4.

[9] *Id.*, Appx. 4–5.

[10] *Id.*, Appx. 6–7.

[11] *Id.*, Appx. 7.

[12] *Id.*

[13] *Id.*

[14] ECF Doc. No. 39–4, Appx. 2 ¶ 5; ECF Doc. No. 48–3 ¶ 2.

[15] ECF Doc. No. 39–4, Appx. 11–13.

[16] Mr. Davis testified the offender is a white male with glasses, between five feet, eight inches to six feet in height, and approximately 200 pounds. ECF Doc. No. 39–4, Appx. 22–24. Mr. Davis could not remember the color of the offender's hair, but testified the offender had facial hair in the way a man would have facial hair without shaving for a week or two and has blue eyes. Mr. Davis swore the offender wore a t-shirt and khaki cargo shorts but could not remember the color of the t-shirt or whether the clothing had any writing on it such as a badge or lanyard with identification or a writing with "Salvation Army. ECF Doc. No. 39–4, Appx. 24–28. Mr. Davis testified the offender wore a name tag but does not recall the name. ECF Doc. No. 39–4, Appx. 29.

Ms. Davis described the offender as a man with blonde hair, a bowl haircut (reminding her of the fictional character Dennis the Menace), gold wire-framed glasses, medium-to-slender build, and around five feet, five inches in height. ECF Doc. No. 39–4, Appx. 9–19. Ms. Davis also does not know who employed the offender. She testified the offender "volunteered" at Camp Ladore. She does not know why the offender volunteered at Camp Ladore, but testified the director of the Ridge Avenue Salvation Army told her over the phone on an unidentified date of an unidentified "court" adjudicating the man as a "sexual offender" and approved his placement at the camp where the "court" monitored him. ECF Doc. No. 39-4, Appx. 12–13. Ms. Davis did not know the age of the offender until some unidentified later time when the director of the Ridge Avenue Salvation Army told her the offender was eighteen-years-old at the time of the alleged abuse in 2002. ECF Doc. No. 39–4, Appx. 10–11.

Case 2:22-cv-04980-MAK   Document 49   Filed 05/05/23   Page 14 of 17

---

[17] ECF Doc. No. 39-4, Complaint, Appx. 3–4 ¶ 13.

[18] ECF Doc. No. 39. Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* (citing *Celotex*, 477 U.S. at 322–23).

[19] The Salvation Army first argues we cannot consider Mr. Davis's "story" as fact at the summary judgment stage. It argues if Mr. Davis's story is to be believed, then we would have to believe the Salvation Army knowingly permitted a sexual offender to be present at the camp, allow him to roam the camp unsupervised, believe a court of law placed the sexual offender at the camp, and Ms. Davis did nothing further even after learning from the director of the Ridge Avenue Salvation Army branch a known sex offender went off with her son for hours. The Salvation Army argues this story "defies reason" is "unbelievable" and we should "disregard" it. The Salvation Army's argument dances around credibility always reserved for the fact finder's determination. But where, as here, there is no record evidence to show a genuine issue of material fact for the jury's determination, we may grant summary judgment.   The Salvation Army also argues Mr. Davis's claim is based on nothing more than an undated conversation between his mother and the director of the Ridge Avenue Salvation Army barred by the hearsay rule. The director of the Ridge Avenue Salvation Army allegedly told Ms. Davis the offender is a sex offender sent to the camp "by the court" as a volunteer. The Salvation Army contends this is hearsay which we cannot consider on summary judgment.

[20] We construe Mr. Davis's negligence claims at paragraph 13(A), (B), (C), and (F) to fall within a failure to protect theory.

14

---

[21] We construe Mr. Davis's negligence claims at paragraph 13(D), (E), (G), (H), and (I) to fall within the negligent hiring and negligent supervision theory.

[22] *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011).

[23] *Scampone v. Highland Park Care Center, LLC*, 57 A.3d 582, 600 (Pa. 2012). Neither party sufficiently addressed the duty element. The Salvation Army failed to address it in its motion, simply asserting Mr. Davis failed to show it owed him a duty. Mr. Davis's response does not develop the basis of the Salvation Army's duty to him. We find a duty but no evidence of breach.

[24] Restatement (Second) of Torts § 314 (1965); *Montagazzi v. Crisci*, 994 A.2d 626, 632 (Pa. Super. Ct. 2010) (citing Restatement (Second) of Torts § 314).

[25] Restatement (Second) of Torts § 314A (1965); *R.D. v. Shohola, Inc.*, No. 16-1056, 2019 WL 1584600, at *3 (M.D. Pa. Apr. 12, 2019) ("*Sholola II*") ((discussing Pennsylvania case law recognizing the application of Restatement (Second) of Torts § 314A to establish tort liability in cases involving generally foreseeable harms caused by the actions of third parties); *Midgette v. Wal-Mart Stores, Inc.*, 317 F. Supp. 2d 550, 558 (E.D. Pa. 2004) (Pennsylvania courts adopted the main text of section 314A but not all its commentary); *Brezenski v. World Struck Transfer, Inc.*, 755 A.2d 36, 41 (Pa. Super. Ct. 2000) (recognizing special relationship found in Restatement section 314A); *T.A. v. Allen*, 669 A.2d 360, 362 (Pa. Super. Ct. 1995) (applying Restatement section 314A to determine duty to protect grandchildren from grandfather's sexual abuse).

The Pennsylvania Supreme Court also applies five factors to determine whether to impose a duty on a defendant: "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000) (the "*Althaus* factors). The Pennsylvania Supreme Court later explained it is not necessary to conduct a "full-blown" *Althaus* analysis if a common law duty exists under the Restatement (Second) of Torts. *Scampone v. Grace Healthcare Co.*, 169 A.3d 600, 617 (Pa. Super. Ct. 2017) (citing *Alderwoods (Pennsylvania), Inc. v. Duquesne Light Co.*, 106 A.3d 27, 40–41 (Pa. 2014)). We agree with Judge Carlson an *Althaus* analysis is not necessary here where Pennsylvania law recognizes a common law duty by a camp to the campers in its care.

[26] *Fabend v. Rosewood Hotels and Resorts, LLC*, 381 F.3d 152, 155 (3d Cir. 2004) (citing Restatement (Second) of Torts § 314A, comment c).

[27] Restatement (Second) of Torts § 315 (1965); *R.D. v. Shohola, Inc.*, No. 16-1056, 2018 WL 5920640, at * 4 (M.D. Pa. Nov. 13, 2018) ("*Sholola I*").

[28] Restatement (Second) of Torts, § 317 (1965); *Brezenski*, 755 A.2d at 41.

[29] Mr. Davis also cites *Shohola I*, imposing a duty on camp owners under the Restatement (Second) of Torts § 314A based on the special relationship with its campers.

15

[30] In response to summary judgment, Mr. Davis does not clearly identify the theory or theories on which he bases his negligence claim against the Salvation Army. Mr. Davis cites the Pennsylvania Supreme Court's analysis is the priest sex abuse context presented in *Hutchinson v. Luddy*. 742 A.2d 1052 (Pa. 1999). In *Hutchinson*, victim and his mother sued the church, diocese, and bishop for negligence. The Pennsylvania Supreme Court found the bishop and the diocese liable under the Restatement section 317 imposing a duty on the bishop and diocese to control its employee pedophile priest. *Id.* at 1062. Mr. Davis's cite to the *Hutchinson* case suggests he is pursuing a negligence theory against the Salvation Army based on its duty to control its employee, the alleged sex offender.

Mr. Davis also argues the Salvation Army camp undertook a duty of care to its campers, vulnerable children dependent on the camp for protection citing Judge Caputo's analysis in the priest sex abuse context presented in *Doe v. Liberatore*. 478 F. Supp. 2d 742 (M.D. Pa. 2007). Judge Caputo found the diocese and church officials owed a fiduciary duty to the victim, predicting Pennsylvania courts would recognize a breach of fiduciary duty between the diocese and church officials based on the priest-parishioner relationship where the parishioner justifiably placed his trust in the priest. *Id.*, at 771–72. We have no such allegations here; Mr. Davis does not allege a breach of a fiduciary duty by the Salvation Army. Neither of Mr. Davis's cited theories apply to his alleged offender and the Salvation Army.

[31] *Shohola I*, 2018 WL 5920640.

[32] *Id.* at * 1.

[33] *Id.* at *3–4.

[34] *Id.* (quoting *Bierke v. Johnson*, 727 N.W. 2d 183, 189 (Minn Ct. App. 2007)). Judge Carlson likened the relationship between the camp and camper as "at least that of *in loco parentis*." *Id.* at *4. Neither party argued the relationship between the Salvation Army Camp Ladore and Mr. Davis is based on an *in loco parentis* relationship.

[35] *Id.* at * 7.

[36] *Id.* at * 5 (citing *Burwell v. Crist*, 373 F.2d 78 (3d Cir. 1967)).

[37] *Burwell*, 373 F.2d at 81.

[38] *Id.*

[39] *Id.* at 81–82.

[40] *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

[41] *Id.*

[42] *Estate of Smith v. Marasco*, 318 F. 3d 497, 514 (3d Cir. 2003).

---

[43] ECF Doc. No. 48–4, Appx. at 24 (using the pagination assigned by the CM/ECF docketing system).

[44] *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016).

[45] *Shohola I*, 2018 WL 5920640 at * 6.

[46] *Id.* at * 7.

[47] *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 488 (3d Cir. 2013) (citing *Hutchinson*, 742 A.2d at 1059–60).

[48] *Id.* at 488, n. 24 (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 309 n. 14 (3d Cir. 2006)). The tort of negligent supervision turns on the principal-agent relationship and is analyzed by Pennsylvania courts under both the Restatement (Second) of Torts § 317 and the Restatement (Second) of Agency § 213. *Id.* at 487, n. 23 (citing *Dempsey v. Walso Bureau, Inc.,* 246 A.2d 418, 419–20 (Pa. 1968) and *Heller v. Patwil Homes, Inc.*, 713 A.2d 105, 107 (Pa. Super. Ct. 1998)).

[49] *Belmont,* 708 F.3d at 488 (footnote omitted).

[50] *Shohola I*, 2018 WL 5920640 at * 7–*8.

[51] *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993).